**SIGNED this 30 day of January, 2019.**



James P. Smith
**James P. Smith**
**Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | Case No. 18-30727-JPS |
| ELRY EUGENE DAVIS, | : | |
|     Debtor | : | |
| | : | |
| ELRY EUGENE DAVIS, | : | |
|     Movant | : | |
| | : | |
| vs. | : | |
| | : | |
| JOYCE D. PARTRIDGE, | : | |
|     Respondent | : | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

    For Debtor/Movant:    Jason T. Braswell
                                       Morgan & Morgan
                                       1090-C Founders Blvd
                                       Athens, GA 30606

    For Respondent:      Daniel L. Wilder
                                       Emmett L. Goodman, Jr., LLC
                                       544 Mulberry Street, Suite 800
                                       Macon, GA 31201

    For Chapter 13 Trustee:    Tony J. Coy
                                       Office of the Chapter 13 Trustee
                                       P.O. Box 954
                                       Macon, GA 31202

**MEMORANDUM OPINION**

The matter before the Court is a former spouse's objection to confirmation of Debtor's Chapter 13 plan and Debtor's request that the Court determine that the former spouse's claim is dischargeable.

FACTS

Debtor and Joyce Partridge f/k/a Joyce Ann Davis ("Partridge"), were married from 1973 to 2002. By Final Judgment and Decree of Divorce (hereinafter "Decree"), entered on March 18, 2002 by the Superior Court of Gwinnett County, Georgia, their marriage was dissolved. At that time, the couple had no minor children. As relates to the matter before the Court, Paragraph 2 of the Decree required Debtor to pay Partridge alimony of $425 per month for 12 months "...or until the death of [Partridge] or the death of [Debtor], or [Partridge's] remarriage, or in the event [Partridge] enters into a meretricious relationship, whichever event shall first occur."[1] Paragraph 3 of the Decree provides, in pertinent part:

> The following transfers of property are pursuant to a division of the equitable interest in such property and said transfers are not in settlement of any alimony or marital property rights. The division of the liquid assets, personal property and real property, as outlined herein, are all in the nature of a property settlement. It is specifically the intent of the parties that the division of said property as outlined herein is not to result in a taxable event to either [Partridge] or [Debtor] and said division is not to be treated by the Internal Revenue Service as alimony, but only as a property division...

---

[1] Partridge remarried about 19 months after the divorce. Further, there is no contention that Debtor failed to meet his obligations under Paragraph 2 of the Decree.

(d) PENSION ACCOUNTS AND RETIREMENT ACCOUNTS.

The Court has determined that through [Debtor's] employment with Gwinnett County, [Debtor] has a pension retirement account which constitutes marital property. As further equitable division of marital property, [Partridge] shall be entitled to receive 35% of [Debtor's] retirement benefits from Gwinnett County.

Based upon the testimony and evidence presented, the Court has determined that in 2004, [Debtor] shall be entitled to receive $1,460.00 per month as retirement pension from Gwinnett County. The Court orders that [Partridge] shall receive 35% of [Debtor's] monthly retirement pension which calculates to $512.00 per month. Accordingly, at such time as [Debtor] elects to begin receiving his retirement benefits from Gwinnett County, [Partridge] shall receive $512.00 per month from [Debtor's] monthly retirement payments. [Partridge] shall receive her $512.00 per month via an Income Deduction Order. [Debtor] shall cooperate with [Partridge] and execute any and all necessary documents to implement said Income Deduction Order. In the event, (sic) [Partridge] is unable to receive these payments through an Income Deduction Order, [Debtor] shall be responsible for paying $512.00 per month directly to [Partridge]. Said payments constitute equitable division of marital property and are not to be considered alimony.

In the event [Debtor] receives additional retirement compensation, [Partridge] is hereby assigned 35% of [Debtor's] interest in any and all retirement and pension income or revenues of any kind received by [Debtor]. Said interest includes 35% of all income and revenues of any source received by [Debtor] pursuant to his pension and/or retirement from Gwinnett County. [Debtor] shall be responsible for notifying Plaintiff upon his election to receive retirement and/or pension payments. [Debtor] shall further be responsible for insuring that [Partridge] receives 35% of all retirement and pension payments received by [Debtor] from Gwinnett County. In the event [Debtor] elects to receive his retirement either in part of (sic) in full in the form of a lump sum payment, Plaintiff shall be entitled to 35% of said lump

> sum payment or payments. As with all provisions contained herein, [Debtor's] failure to comply with the terms and conditions of this paragraph, will be punishable by contempt powers of this Court and may result in imprisonment of [Debtor].
>
> In the event of [Debtor's] death, [Partridge] shall be entitled to receive 35% of [Debtor's] death benefits. Accordingly, [Partridge] shall be designated [Debtor's] surviving spouse and alternate payee, and shall be entitled to receive 35% of all benefits following [Debtor's] death. [Debtor] shall provide proof on an annual basis to [Partridge] that she remains designated the surviving spouse on [Debtor's] retirement pension account, and that she will continue to receive 35% of [Debtor's] death benefits following the death of [Debtor].
>
> [Partridge] shall be entitled to retain 100% of her 401(k) accumulated through her employment.

Debtor retired from his road maintenance job with Gwinnett County in 2004 and began receiving payments from his Gwinnett County retirement pension. In accordance with the Decree, some time thereafter Debtor began sending Partridge cashier's checks of $512 per month. Partridge testified that Debtor was not always timely with his payments and that, at one point, she filed a contempt action to enforce her rights to the pension payments. She testified that at the time of Debtor's bankruptcy filing, he was approximately $2,500 in arrears.

On July 17, 2018, Debtor filed his voluntary Chapter 13 petition. Part 6(f) of Debtor's plan provides:

> "Debt owed to Joyce D. Partridge (aka Joyce Ann Davis) is a property settlement and will be treated as a general unsecured debt subject to discharge upon completion of the plan."

Partridge has not filed a proof of claim in this case. However, she did file, pro se, an

objection to confirmation (Docket No. 12)², alleging that she had been awarded a 35% interest in Debtor's Gwinnett County pension and that "...the monies he owes me are <u>not</u> part of his payment plan to his other creditors." (emphasis in the original).

Thereafter, Debtor filed a motion (Docket No. 18) asking the court to determine that Partridge's claim against Debtor was a dischargeable property settlement. Partridge, now represented by counsel, filed a response (Docket No. 21), alleging that the Decree acted to grant Partridge a current and vested interest in 35% of the pension and that this portion of the pension was not property of the estate. Alternatively, Partridge argued that the award of the interest in the pension was a nondischargeable domestic support obligation.

A hearing on confirmation and the motion was held on November 28, 2018.³

## DISCUSSION

Partridge argues that the plan is not confirmable and that her claim to the pension benefits are not dischargeable because her 35% interest in the pension is her sole and separate property. She relies on a number of cases where bankruptcy courts have recognized and enforced vested interests in pensions granted to a former spouse in divorce proceedings. In fact, in this district, the Court has recognized such rights. <u>Sadowski v. Sadowski (In re</u>

---

² The Chapter 13 trustee also filed an objection to confirmation (Docket No. 13) contending that the plan did not meet the disposable income test under 11 U.S.C. § 1325 and that the plan had not been proposed in good faith. However, the trustee did not advocate this objection at the hearing on confirmation.

³ Partridge had also asserted in her response to the motion that a request for determination of dischargeability can only be brought by an adversary proceeding pursuant to Bankruptcy Rule 7001(6). However, at the hearing, Partridge waived this defense and agreed for the Court to hear the matter as a contested matter.

Sadowski), 144 B.R. 566 (Bankr. M.D. Ga. 1992) (military retirement benefits); Adamo v. Ledvinka (In re Ledvinka), 144 B.R. 188 (Bankr. M.D. Ga. 1992) (retirement account); Farrow v. Farrow (In re Farrow), 116 B.R. 310 (Bankr. M.D. Ga. 1990) (military retirement benefits).

The Supreme Court has held:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

Butner v. U.S., 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed 2d 136 (1979). Accordingly, Georgia law will control the property rights of the parties in the Gwinnett County pension.

O.C.G.A. §47-2-20 establishes a retirement system, known as the Employees' Retirement System of Georgia, for employees of the state and its political subdivisions.[4]

O.C.G.A. § 47-2-332 provides, in pertinent part:

> (a) The right to a pension, annuity, retirement allowance, return of contributions, the pension, the annuity, or retirement allowance itself, any optional benefit, or any other right accrued or accruing to any person under this chapter and the monies in the various accounts created by this chapter are...
>
> (2) Exempt from levy and sale, garnishment, attachment, or any other process whatsoever; and
> (3) Not assignable except as otherwise specifically provided in this chapter.

---

[4] Debtor's reliance on Chapter 5 of Title 47, specifically O.C.G.A. § 47-5-71, is misplaced. Chapter 5 of Title 47 applies to retirement benefits for employees of municipal corporations. O.C.G.A. § 47-5-1. Gwinnett County is a "political subdivision" of the State of Georgia. O.C.G.A. § 47-1-20(4). Accordingly, its pension system is included in the Employees' Retirement System of Georgia.

> (b) The tangible, intangible, real, personal, or mixed property, investments, or assets of the retirement system of whatever kind or nature and the earnings or proceeds derived from such property, investments, or assets are public property and are: ...
>
>> (2) Exempt from levy and sale, garnishment, attachment, or any other process whatsoever.

In the case of <u>Bryant v. Employees Retirement System of Georgia</u>, 216 Ga. App. 737, 455 S.E. 2d 839 (1995), the former wife was awarded one-third of her ex-husband's monthly retirement administered by the Employees' Retirement System of Georgia. The divorce decree ordered the Retirement System to pay the benefits to the former wife each month. The former wife brought suit in state court to enforce this decree against the Retirement System, but the trial court granted the Retirement System's motion to dismiss. On appeal, the court held:

> We agree with the trial court that the court issuing the divorce decree could not properly order ERS to pay benefits to plaintiff directly, and therefore affirm.
>
> There is no question that the ex-husband's retirement benefits are marital property subject to equitable division. (citation omitted). The issue here is whether ERS may be ordered to transfer ownership of a portion of the benefits and pay them directly to plaintiff, or whether plaintiff must collect her share of the benefits from her ex-husband after he receives them.
>
> Under O.C.G.A. § 47-2-332, a State employee's retirement benefits are exempt from attachment or other legal process and are not assignable. The court issuing the divorce decree nevertheless ordered the assignment of a portion of the ex-husband's benefits relying on the Retirement Equity Act of 1984, 29 USCA § 1056(d). This portion of the federal statute provides that while benefits under a pension plan may not be assigned or alienated as a general matter, they may be assigned or otherwise transferred to an alternate payee pursuant to a "qualified domestic relations order." The divorce court's

> reliance on this provision was misplaced, however, as pension plans established for employees of state governments are expressly excluded from the act's coverage. See 29 U.S.C. §§ 1003(b)(1) & 1002(32).

Thus, the Court of Appeals of Georgia has held that state law prohibits a divorce court from assigning pension rights such as those at issue here to a former spouse in a divorce decree. Accordingly, the Decree did not grant Partridge a vested interest in Debtor's Gwinnett County pension.

Partridge also argues that the Court should find that Debtor holds payments from the pension in constructive trusts for Partridge to the extent of her 35% interest therein. The Court recognizes that in Farrow, supra, a Chapter 7 case, the court, relying on O.C.G.A. § 53-12-32 (now 53-12-132), found, in the alternative, that the debtor held any postpetition payments under his military retirement benefits in a constructive trust for the former spouse. O.C.G.A. § 53-12-132(a) provides:

> A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interests in the property without violating some established principle of equity.

Pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the treatment in Chapter 13 cases of obligations under divorce decrees was changed. As amended, "domestic support obligations" excepted from discharge pursuant to 11 U.S.C. § 523(a)(5) are not dischargeable upon completion of a Chapter 13 plan. 11 U.S.C. § 1328(a)(2). However, property settlements, which are not dischargeable under 11 U.S.C. § 523(a)(15) in a Chapter 7 case, are dischargeable in a Chapter 13 case upon completion of

the plan. Thus, Congress has made the decision that a debtor can discharge his or her obligations under a property settlement incurred in connection with a divorce proceeding.

The Court will discuss below whether Debtor's obligation to Partridge is a domestic support obligation or a property settlement. To the extent the Court determines that the obligation is a domestic support obligation, Debtor will have to modify his plan, since his plan cannot be confirmed unless he is current with his postpetition obligations to Partridge (11 U.S.C. § 1325(a)(8)) and he will be unable to obtain a discharge unless he is current with his obligations to Partridge at the time of plan completion (11 U.S.C. § 1328(a)). Accordingly, the Code provides Partridge with sufficient protection without the need for the additional assistance of a constructive trust.

To the extent the Court determines that Debtor's obligation to Partridge is a property settlement, the Court declines to extend Farrow to a Chapter 13 case. By making property settlements dischargeable in Chapter 13 cases, Congress has determined where the "equities" of the parties should lie. If a former spouse could avoid this result by having a constructive trust imposed on property included in a property settlement, the policy decision which Congress has made would be ignored. Cf. Rosetta Stone Commc'ns, LLC v. Gordon (In re Chambers), 500 B.R. 221, 230 (Bankr. N.D. Ga. 2013) (even if state law would impose a constructive trust, constructive trust will not be imposed if that would be against federal bankruptcy policy). (quoting Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.), 178 B.R. 480, 489 (9th Cir. BAP 1995)). Accordingly, the Court declines to impose a constructive trust.

The Court must next determine whether the pension benefit obligation is a domestic

10

support obligation or a property settlement. The distinction between domestic support obligations and property settlements was recently considered by Judge Carter of this Court in the case of Jones v. Jones, 2018 WL 1940380 (Bankr. M.D. Ga., Jan. 31, 2018). As Judge Carter held:

> The "touchstone" for determining the difference between domestic support and property settlement obligations is the intent of the parties. Cummings v. Cummings, 244 F.3d. 1263, 1266 (11th Cir. 2001). "In determining whether a particular obligation is in the nature of support, '[a]ll evidence, direct or circumstantial, which tends to illuminate the parties [sic] subjective intent is relevant.'" Id. (citations omitted). In assessing the intent of the parties, courts should look beyond the label the parties or the divorce court have given to a particular debt and determine whether the subject obligation is actually in the nature of alimony or support. Id. at 1265. Thus an obligation is a domestic support obligation if the parties intended it to function as support or alimony, regardless of whether a different label is given to it. Id.
>
> This Court...has previously cited a list of non-exclusive factors which should be considered in assessing intent in this context, which was subsequently approved by the Eleventh Circuit. These factors include:
>
>> (1) the agreement's language;
>> (2) the parties financial position when the agreement was made;
>> (3) the amount of the division;
>> (4) whether the obligation ends upon death or remarriage of the beneficiary;
>> (5) the frequency and number of payments;
>> (6) whether the agreement waives other support rights;
>> (7) whether the obligation can be modified or enforced in state court; and
>> (8) how the obligation is treated for tax purposes.
>
> Benson v. Benson (In re Benson), 441 Fed. Appx. 650, 651 (11th Cir. 2011) (citing In re McCollum, 415 B.R. 625, 631

11

(Bankr. M.D. Ga. 2009).

Other courts have characterized relevant factors in a slightly different fashion:

> (1) Whether the obligation under consideration is subject to contingencies, such as death or remarriage;
> (2) Whether the payment was fashioned in order to balance disparate incomes of the parties;
> (3) Whether the obligation is payable in installments or a lump sum;
> (4) Whether there are minor children involved in a marriage requiring support;
> (5) The respective physical health of the spouse and the level of education;
> (6) Whether, in fact, there was a need for spousal support at the time of the circumstances of the particular case.

Norton v. Norton (In re Norton), No. 16-10323-WHD, 2017 WL 933023, at*3 (Bankr. M.D. Ga., March 8, 2017) (citing Robinson v. Robinson (In re Robinson), 193 B.R. 367, 372 (Bankr. N.D. Ga. 1996).

Jones v. Jones, at *2-3.

The evidence establishes that, as part of the divorce proceeding, Debtor and Partridge, while represented by counsel, engaged in a series of mediation sessions. The resulting agreement reached by the parties was then presented to and adopted by the court in the form of the Decree. The language and structure of the negotiated Decree suggests that the parties intended for the pension benefit obligation to be a property settlement. Alimony is specifically provided for in paragraph 2 of the Decree. Paragraph 3 of the Decree specifically states that it is "a division of the equitable interest in...property and said transfers are not in settlement of any alimony or marital property rights. The division of the

liquid assets, personal property and real property, as outlined herein, are all in the nature of a property settlement."

Further, while the alimony obligation under paragraph 2 of the Decree ends upon the death of either party or the remarriage of Partridge, the division of property, including the pension benefits, is not affected by remarriage or death. Indeed, the Decree provides that, even if Debtor dies, Partridge is still entitled to receive 35% of his death benefits.

The evidence also establishes that there were no minor children at the time of the divorce. Accordingly, there was no need for additional support. Finally, the Decree specifically provides that the division of property is not to be a taxable event and is not to be treated by the Internal Revenue Service as alimony. All of these factors weigh heavily in favor of a finding that it was the parties' intent that the pension benefit obligation was to be a property settlement and not alimony.

On the other hand, there was evidence that there was a disparity of income at the time of the divorce. Debtor was making between $37,000 and $40,000 annually while Partridge was making approximately $25,000. This weighs in favor of finding the obligation was intended to be alimony. However, this is mitigated by the fact that actual alimony was only to last 12 months. It seems unlikely that the parties would have intended for the retirement benefit, which would not become due until 2004 at the earliest, to balance out incomes when Partridge was receiving no alimony after March 2003.

When all of these factors are considered, it appears that the parties intended for the pension benefit obligation to be a property settlement and not alimony. Further, the Court notes that, pursuant to O.C.G.A. § 19-6-5(b):

> All obligations for permanent alimony, however created, the
> time for performance of which has not arrived, shall terminate
> upon remarriage of the party to who the obligations are owed
> unless otherwise provided.

As previously noted, the Decree provides in paragraph 2 that the alimony is to cease upon Partridge's remarriage. There is no similar provision in paragraph 3 of the Decree. The evidence establishes that Partridge remarried approximately 19 months after the divorce, or in October 2004. Debtor retired in December 2004. Accordingly, his obligation to pay Partridge part of his retirement benefits did not accrue until after she had remarried. If the Court were to hold that the retirement benefit was intended as alimony, it seems that Debtor would be able to object to Partridge's claim, in its entirety, as no longer enforceable under O.C.G.A. § 19-6-5(b).

Partridge also objects to confirmation of the Debtor's plan on the grounds that his petition was filed in bad faith.

> 11 U.S.C. § 1325(a) provides, in pertinent part:
>
>> ...the court shall confirm a plan if-
>>     ...
>>     (7) the action of the debtor in filing the petition
>>     was in good faith...

As the Eleventh Circuit has explained:

> ... Chapter 13 contains two "good faith" requirements. First, subsection (a)(3) of § 1325 requires the bankruptcy court to determine if the *plan* was proposed in good faith. 11 U.S.C. § 1325(a)(3). Subsection (a)(7), similarly, mandates consideration of whether the *petition* was filed in good faith. *Id.* § 1325(a)(7). Congress did not define or articulate standards for "good faith" in subsections (a)(3) or (a)(7).
>
> As to subsection (a)(3), this Court had set forth a non-exclusive list of factors relevant to whether a plan was proposed in good faith. [*Kitchens v. Georgia R.R. Bank and Trust Co. (In re*

> *Kitchens)*, 702 F.2d 885, 888-89 (1983)]. These factors are: (1) "the amount of the debtor's income from all sources"; (2) "the living expenses of the debtor and his dependents"; (3) "the amount of attorney's fees"; (4) "the probability or expected duration of the debtor's Chapter 13 plan"; (5) "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13"; (6) "the debtor's degree of effort"; (7) "the debtor's ability to earn and the likelihood of fluctuation in his earnings"; (8) "special circumstances such as inordinate medical expense"; (9) "the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors"; (10) "the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors"; (11) "the burden which the plan's administration would place on the trustee"; (12) "the extent to which claims are modified and the extent of preferential treatment among classes of creditors"; (13) "substantiality of the repayment to the unsecured creditors"; and (14) "other factors or exceptional circumstances." *Id.*
>
> These same *Kitchens* factors for subsection (a)(3) are equally relevant to determining whether a petition was filed in good faith under subsection (a)(7). Importantly too, "the facts of each bankruptcy case must be individually examined in light of [these] various criteria to determine whether the chapter 13 plan at issue was proposed in good faith." *Id*. at 888. While *Kitchens* does not use this phrase, it basically adopts a "totality of the circumstances" approach for determining good faith or lack thereof, which is what other circuits do, too.

*Brown v. Gore (In re Brown)*, 742 F.3d. 1309, 1316-17 (11th Cir. 2014). The Eleventh Circuit

has also:

> ... explained that broadly defined "good faith" means that the petition must be filed with the honest intent and genuine desire to utilize the provisions of Chapter [13] for its intended purpose--to effectuate...reorganization--and not merely as a devise to serve some sinister and unworthy purposes of the petitioner. However, there is no particular test for determining whether a petition is filed in bad faith. Instead, this Court has held that the courts may consider any factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions, or in particular, factors which evidence that the petition was file[d] [sic] to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.

*Rivas v. Bank of New York Mellon (In re Rivas)*, 682 Fed. Appx. 842, 845 (11th Cir. 2017) (internal quotations and citations omitted).  Although Debtor bears the ultimate burden of proving his plan is confirmable, Partridge, as the objecting creditor, has the initial burden of going forward with some evidence to support her objection.  *Matter of Duke,* 447 B.R. 365, 368 (Bankr. M.D. Ga. 2011).

      Partridge argues in her brief that Debtor's bad faith filing is established by the fact that he had no significant changes of income or expenses prior to filing.  However, the Court is unaware of any requirement that a debtor show a significant change in financial circumstances in order to establish good faith and Partridge has cited no such law.  Debtor testified that he filed his Chapter 13 case due to stress and the inability to save any money.  The Court finds that Partridge has failed to establish evidence proving bad faith.  Rather, the evidence establishes that Debtor has an honest intent to use Chapter 13 to reorganize.

      Partridge also argues that Debtor failed to list assets on his Schedules and failed to list transfers on his Statement of Financial Affairs.  From Debtor's testimony, it appears that Debtor did fail to list clothing in a storage unit having a value of approximately $500.  He also failed to disclose a pre-fab storage unit located on a friend's property.  However, there was no evidence as to the value of this storage unit.  As to other alleged items of property not listed, Debtor explained that he no longer owned those items of property and there was no evidence to the contrary.  With respect to transfers of property, question 18 of the Statement of Financial Affairs for Individuals Filing for Bankruptcy (Official Form 107) requires the disclosure of all transfers within 2 years prior to filing.  There was no testimony of any transfers within that period of time.

      Errors and omissions in schedules do not establish lack of good faith where the debtor received no advantage therefrom.  <u>In re Roberts</u>, 339 B.R. 807, 813 (Bankr. M.D. Ga. 2006).

While there do appear to have been errors in the disclosure of assets, there was no showing that proper disclosure would have affected the value of assets that must be distributed under Debtor's plan to meet the best interest test required by 11 U.S.C. § 1325(a)(4).

Finally, Partridge argues that Debtor is not contributing to his Chapter 13 plan all of his projected disposable income. For purposes of 11 U.S.C. § 1325(b)(1)(B), Debtor is a "below median income debtor". Accordingly, the amount he must contribute to his plan is determined by his income and expenses disclosed on Schedules I and J. Based on this calculation, Debtor is paying $250 per month under his proposed plan.

Debtor's Schedule J discloses monthly rent of $800 and monthly utilities of $800. However, Debtor testified that he was house sitting for a friend who was recovering from surgery, paying no rent and paying only $300 per month for utilities. Accordingly, the evidence establishes that Debtor has significantly overestimated his expenses and is not contributing to his plan all of his projected disposable income. For this reason, Debtor's plan is not confirmable.

In summary, the Court finds that the pension benefits are not the property of Partridge and that the obligation to pay those pension benefits is a dischargeable property settlement. The Court further concludes that this case was filed in good faith. Accordingly, Partridge's objections on those grounds are overruled. However, because Debtor is not contributing to his plan all of his projected disposable income as required by 11 U.S.C. § 1325(b)(1)(B), confirmation of the plan is denied. An order consistent with this opinion will be entered.

*END OF DOCUMENT*